IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Elizabeth Foster, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 2:06-cv-2440-PMD-RSC |
| v. | ) | |
| | ) | **ORDER** |
| BNP Residential Properties Limited | ) | |
| Partnership, BNP Residential Properties, | ) | |
| Inc., and BNP/Waverly Place, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court upon a Motion for Summary Judgment filed by BNP

Residential Properties Limited Partnership ("BNPLP"), BNP Residential Properties, Inc.

("BNP"), and BNP/Waverly Place, LLC ("BNP/Waverly Place"), collectively referred to as

"Defendants" or "BNP."  For the reasons set forth herein, the court grants Defendants' motion.

## BACKGROUND

Plaintiff Elizabeth Foster ("Plaintiff" or "Foster") filed suit against BNP, her former

employer, on August 31, 2006, asserting causes of action for (1) violation of Title VII of the Civil

Rights Act of 1964, as amended, for failure to promote on the basis of her female gender; (2)

violation of Title VII for constructive discharge; and (3) South Carolina common law tort of negligent

supervision.  This lawsuit arises out of Plaintiff's employment at Waverly Place Apartments

("Waverly") in North Charleston, South Carolina.  From June or July of 2002 until June of 2004,

Plaintiff worked at Waverly as a maintenance technician.  During this time, another entity owned

Waverly; BNP purchased Waverly in April of 2005.

In June of 2005, Plaintiff returned to Waverly to visit some of the people with whom she had

worked, but she discovered that none of them still worked at Waverly.  While she was there at

Waverly, Plaintiff told Jeff Brigmond, BNP's Acting Regional Service Manager, that she was presently a service technician and that she had worked at Waverly in the past. Brigmond told Plaintiff that Waverly was not hiring a maintenance supervisor at that time but that Waverly was seeking to hire two maintenance technicians. Brigmond encouraged Plaintiff to apply for a maintenance technician job, and Brigmond told Plaintiff that a service manager would eventually be selected from these two technicians.

Before Plaintiff reported to work at Waverly, Ron Odell became the maintenance supervisor.[1] Director of Projects Phillip Foley and Regional Property Manager Reta Lane jointly made the decision to offer Odell this position. They did not consider any outside candidate for this maintenance supervisor vacancy. Odell had prior maintenance supervisor experience with BNP and another property owner, and he agreed to locate from his assignment in Charlotte, North Carolina, to the Waverly Place property in South Carolina.

Plaintiff applied for a position as a maintenance technician at Waverly in July of 2005. Plaintiff wanted the position of maintenance supervisor, and as the Magistrate Judge noted, she applied for a position as a maintenance technician with the idea that the job was going to be a quick stepping stone to the maintenance supervisor position. She took the job and reported for work on August 2, 2005, with Odell as her supervisor.

In September of 2005, Odell resigned his employment with BNP, and at that time, BNP

---

[1]Plaintiff disputes when Odell became the maintenance supervisor at Waverly. Although Defendants assert Odell became the maintenance supervisor in June of 2005, according to Plaintiff, the earliest date he became supervisor was July 18, 2005. It is undisputed that Odell actually reported to work as maintenance supervisor on August 1, 2005. For the reasons discussed in this Order, however, it is not necessary to determine whether Odell became the maintenance supervisor in June or July of 2005 in order to resolve the Motion for Summary Judgment.

management was already planning a lateral move to assign the Savannah Shores supervisor, Ron Keller, to another supervisor position in order to keep him employed, as Savannah Shores was being sold by BNP. Since Keller was already a BNP maintenance supervisor, he was offered the lateral move without Lane and Foley considering anyone else from the inside or outside BNP for the job.

Keller was willing to relocate to stay with BNP, but he preferred to relocate to the Mount Pleasant, South Carolina area where BNP owned property called Pace's Watch. Lane and Foley agreed that it would make the best business sense to ultimately move Keller to the Pace's Watch property and also move the then-current Pace's Watch maintenance supervisor, Cory Sanders, to Waverly. Until BNP could work out the timing and other details of this "swap," however, Keller agreed to be temporarily assigned as the maintenance supervisor at Waverly. As the Magistrate Judge noted, there was thus no "new" vacancy after Keller began his temporary assignment at Waverly Place in October of 2005. In November of 2005, Sanders began his employment at Waverly as maintenance supervisor, and Keller moved to Pace's Watch as planned.

Plaintiff's employment included a ninety day probation period which ended in early November. Foley and Lane approved a pay increase for Plaintiff in November 2005, and in mid-November, Brigmond and Lane took Plaintiff out to lunch to tell her about the pay increase and how much they appreciated her good work. Plaintiff resigned on December 7, 2005.

The instant lawsuit was filed in August of 2006, and BNP filed a Motion for Summary Judgment on June 1, 2007. Plaintiff filed her Response in Opposition on August 22, 2007, and BNP filed a reply on September 4, 2007. A hearing on the Motion for Summary Judgment was held on September 13, 2007, and at that time, Plaintiff sought to add an affidavit to the record and to engage in additional discovery. Defendants opposed both motions, and Magistrate Judge Carr denied the

motion to add an affidavit to the record and the motion to engage in additional discovery. Plaintiff appealed the ruling on those motions to this court, and in an order dated October 30, 2007, this court affirmed the rulings of Magistrate Judge Carr.

Judge Carr issued a Report and Recommendation (R&R) on November 26, 2007, in which he recommended granting BNP's Motion for Summary Judgment. He noted that in Plaintiff's first cause of action, she contended that she was "subjected to disparate treatment due to Defendants' failure to promote her to the supervisor position despite her being more qualified to hold that position than the males selected for the position." (Compl. ¶ 34.) Because the Magistrate Judge determined it was "undisputed that there is no direct evidence of gender discrimination," he concluded the claim should be analyzed under the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (R&R at 6-7.) Pursuant to this framework, the Magistrate Judge stated,

> [T]o make a *prima facie* case of discriminatory failure to promote, a plaintiff must show she: (1) is a member of a protected group; (2) applied for an open position; (3) was qualified for the position; and (4) was rejected from the position under circumstances giving rise to an inference of unlawful discrimination.

(R&R at 7.)

In assessing Plaintiff's claims, the Magistrate Judge first stated,

> A review of the record and relevant case law reveals that Plaintiff has not forecast evidence from which a reasonable jury could conclude that she was not hired to be the maintenance supervisor because of the defendant's illegal gender based discrimination, that she was constructively discharged, or that the defendant is liable to her for negligent supervision.

(R&R at 9.) He concluded Plaintiff had not established a *prima facie* case of discrimination with respect to any challenged employment decision because (1) she did not carry her burden to establish that she applied for an open position, and (2) she cannot establish that she was rejected from a position under circumstances giving rise to an inference of unlawful discrimination because she

4

cannot establish that there ever was an open position for which she applied. (*Id.*) The R&R further states,

> At oral argument before the undersigned on September 13, 2007, Plaintiff conceded that she had no evidence that there was an opening for a maintenance supervisor when Sanders or Keller became the maintenance supervisor at Waverly Place. Her only challenge therefore is that she should have been made maintenance supervisor when Odell was placed in that job. However, it is undisputed that Plaintiff did not even begin work as a BNP employee until August 2005. Odell was offered the maintenance supervisor position in late June 2005, before Plaintiff applied for and before [P]laintiff was offered employment as a maintenance technician. (Lane Aff. ¶ 4; Foley Aff. ¶ 6.) Plaintiff was not an employee at the time Odell was selected, so Plaintiff's failure to promote claim is illogical and without any factual support.
>
> In light of these undisputed facts, there was not an "open" maintenance supervisor position when Plaintiff first became an employee. Plaintiff cannot challenge a decision to promote if there was no open position. See, e.g., White, 872 F.2d at 420 ("[Plaintiff] did not prove the first element of the prima facie case because the lateral transfer of an employee in accordance with company policy refutes the plaintiff's claim that there was an opening into which she could have been promoted.") Not only was there no opening, Plaintiff never applied for the June 2005 maintenance supervisor position. Plaintiff completed her application for and was offered the maintenance technician position in July 2005. (Pl.'s Dep. Ex. 1, 3.) While Plaintiff let various of the defendant's employees know that her ambition was to be promoted[,] that does not come close to actually applying for an open position. Even assuming she made general requests for advancement, these are insufficient to support a claim for failure to promote. See, Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004). Her claim should fail.

(R&R at 10-11.)[2]

Plaintiff filed objections on January 15, 2008, and BNP filed a Reply on February 1, 2008.[3]

---

[2]The Magistrate Judge also recommended granting BNP's Motion for Summary Judgment with respect to her claims for constructive discharge and negligent supervision. (R&R at 11-12.) In her objections, Plaintiff seems to acknowledge these claims do not have merit, as she states that she "hereby abandons her constructive discharge and negligent supervision claims." (Objections at 18.) Finding no objection to the Magistrate Judge's recommendation with respect to these two claims, the court grants BNP's Motion for Summary Judgment with respect to the claims of constructive discharge and negligent supervision.

[3]Plaintiff objects to the court's consideration of BNP's Reply to Plaintiff's Objections, asserting that BNP's Reply was not timely filed. Plaintiff filed her objections on January 15,

<u>**STANDARD OF REVIEW**</u>

**A.     Magistrate Judge's R&R**

This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R.  28 U.S.C. § 636(b)(1).  After a review of the entire record, the R&R, and Plaintiff's objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law.  However, because this court relies on some facts that were not considered by the Magistrate Judge, the court adopts the Magistrate Judge's R&R to the extent not inconsistent with this order.

**B.     Summary Judgment**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The judge is not to weigh the evidence but rather must determine if there is a

---

2008, and BNP filed its response on February 1, 2008.  Rule 72(b)(2) of the Federal Rules of Civil Procedure states, in part,

> **(2) Objections.** Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 10 days after being served with a copy.

Fed. R. Civ. P. 72(b)(2).  Pursuant to Rule 6 of the Federal Rules of Civil Procedure, the day of the event that begins the period is excluded, and intermediate Saturdays, Sundays, and legal holidays are excluded because the time to respond is less than eleven days.  *See* Fed. R. Civ. P. 6(a).  The "clock" thus began running on January 16, 2008, and excluding Saturdays, Sundays, and Martin Luther King Jr.'s Birthday, BNP's response would be due on January 30, 2008.  Furthermore, pursuant to Rule 6(d), "When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)."  As Rule 5(b)(2)(E) contemplates service by electronic means, it appears BNP had an additional three days beyond January 30, 2008, in which to timely respond to Plaintiff's objections.  The court thus concludes that it is appropriate to consider BNP's response, as it was timely filed.

genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party 'is particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327.

## ANALYSIS

Plaintiff makes several objections to the Magistrate Judge's R&R. Plaintiff states,

> The Magistrate did not give any credence to Plaintiff's testimony and ignored all documentary evidence that contradicted the testimony of Defendants. Indeed, with respect, the Magistrate seems to have only listened to the Defendants' side of the story. It would appear that the Magistrate agrees that the Plaintiff, despite having the qualifications to be a supervisor, was only good enough to be a maintenance technician but not a supervisor. And, the only explanation for that is that she is a woman. This court must not allow a perpetuation of irrational gender based stereotyping.

(Objections at 6.)[4]  Then, in a footnote, Plaintiff states, "Although somewhat an extreme example, one would reckon that Plaintiff has experienced the same feelings that retired U.S. Supreme Court Justice Sandra Day O'Connor must have felt when, despite her qualifications, she was offered a legal secretary position instead of a position as a lawyer."  (Objections at 6 n.1.)

Plaintiff makes several objections to the Magistrate Judge's recitation of the facts, and having examined both the Objections and BNP's Response, it appears that Plaintiff is now highlighting evidence that she did not highlight in her Response in Opposition to Defendants' Motion for Summary Judgment or at the hearing on the motion.  She also appears to again be seeking to introduce new evidence.

Considering the Objections as a whole, it appears Plaintiff is asserting (1) various errors in the Magistrate Judge's recitation of the facts concerning the events of June and July of 2005, when Plaintiff applied for a position at Waverly; (2) various errors in the Magistrate Judge's recitation of the facts concerning the personnel change in the maintenance supervisor position after Odell resigned; (3) error in the Magistrate Judge's use of the *McDonnell Douglas* framework; (4) error in the determination that Plaintiff had no direct evidence of gender discrimination; (5) error in the determination that she did not carry her burden to show that she applied for an open position as maintenance supervisor; and (6) error in the determination that she cannot establish there ever was an open position for which she applied.  (*See* Objections.)

Although Plaintiff's first objection is to the Magistrate Judge's recitation of the facts, the

---

[4]Having read Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and the transcript of the hearing on the motion, the court finds Plaintiff's suggestion that the Magistrate believes Plaintiff is not qualified to be a supervisor because she is a woman to be *completely* without merit and disrespectful.

court will first address Plaintiff's argument that the Magistrate Judge erred in using the *McDonnell Douglas* framework. It appears Plaintiff is arguing Plaintiff's claims should have been analyzed under the mixed-motive theory discussed in *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277 (4th Cir. 2004) (en banc). At the outset, the court notes that Plaintiff never argued this mixed-motive analysis was the appropriate analysis until she filed her Objections. Her Response in Opposition to BNP's Motion for Summary Judgment does not mention this theory, and it is clear from reading the transcript of the hearing on the Motion for Summary Judgment that Plaintiff was proceeding under the *McDonnell Douglas* theory. (*See* Tr. at 32:21-33:7.)

In determining whether the court must address Plaintiff's new argument, the court considers *United States v. George*, 971 F.2d 1113 (4th Cir. 1992). In *George*, the Fourth Circuit concluded it was error for the district court to refuse to entertain two arguments the Government made for the first time in its objections to the Magistrate Judge's recommendation that evidence obtained pursuant to two search warrants should be suppressed. The court stated,

> We believe that as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate. By definition, *de novo* review entails consideration of an issue as if it had not been decided previously. It follows, therefore, that the party entitled to *de novo* review must be permitted to raise before the court any argument as to that issue that it could have raised before the magistrate. The district court cannot artificially limit the scope of its review by resort to ordinary prudential rules, such as waiver, provided that proper objection to the magistrate's proposed finding or conclusion has been made and the appellant's right to *de novo* review by the district court thereby established. Not only is this so as a matter of statutory construction; any other conclusion would render the district court's ultimate decision at least vulnerable to constitutional challenge.

*Id*. at 1118. Because the Magistrate Judge's recommendation that the motion to suppress should be granted was properly before the district court, the district court committed error in failing to address

all arguments concerning that issue. *See id.*

Plaintiff cites *Hill* to support her argument that she can proceed under a mixed-motive theory. In *Hill v. Lockheed Martin*, the plaintiff brought suit against her former employer claiming wrongful termination on the basis of her sex and age and in retaliation for her complaints of such discrimination. *See Hill*, 354 F.3d at 281. The court noted that "[g]enerally speaking, a plaintiff may avert summary judgment and establish a claim for intentional sex or age discrimination through two avenues of proof." *Id.* at 284. First, a plaintiff may establish a claim of discrimination by "demonstrating through direct or circumstantial evidence that sex or age discrimination motivated the employer's adverse employment decision." *Id.* In order to prevail, however, it is not necessary that the employee demonstrate the prohibited characteristic was the sole motivating factor; the plaintiff need only prove that it was a "motivating factor." *Id.* The court noted that the courts previously held, even after Congress added § 2000e-2(m) to Title VII, that a plaintiff had to produce direct evidence to establish a mixed-motive discrimination case. *Id.* However, after the decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003), the Court held that no such "heightened showing through direct evidence" is required. *See Hill*, 354 F.3d at 285. Thus, a plaintiff need only demonstrate that an employer "used a forbidden consideration with respect to any employment practice." *Desert Palace*, 539 U.S. at 98; *Hill*, 354 F.3d at 285. The court then recognized the "pretext" framework of *McDonnell Douglas* was the second method of averting summary judgment in a discrimination case. *Hill*, 354 F.3d at 285.

Plaintiff never presented any arguments concerning the first method of establishing a claim for discrimination, and thus it is not certain that Plaintiff is entitled to have this argument considered now. However, out of an abundance of caution, the court addresses Plaintiff's argument.

10

> Regardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination. To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that the protected trait actually motivated the employer's decision. The protected trait must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.

*Id*. at 286 (internal quotation marks and citations omitted). Under either theory, Plaintiff must show the protected trait motivated BNP's decisions, and that is a showing Plaintiff is unable to make. Thus, if the Magistrate Judge erred in failing to address a theory that Plaintiff did not present, such an error was harmless.

Plaintiff asserts that, contrary to the Magistrate Judge's determination, there is direct evidence of gender discrimination. Plaintiff points to her deposition testimony that Kim Duvall, Defendants' property manager, told Plaintiff that Foley did not want to hire Plaintiff because she was a girl and he did not think she would be able to do the job. (Objections at 13; *see* Pl.'s Dep. 77:12-77:23.) It is surprising that Plaintiff chose not to highlight this evidence in her Response in Opposition or during the hearing. Indeed, the only way the Magistrate Judge would have found this evidence is if he had read Plaintiff's entire deposition, which is over 250 pages long. It appears that while Plaintiff chastises the Magistrate Judge for believing that Plaintiff was unfit for a supervisory position because she was a female, Plaintiff herself is at fault for failing to present her best evidence to the Magistrate Judge. In *Tyson v. Ozmint*, No. 6:06-0385-PMD-WMC, 2006 WL 3139682, at *3 (D.S.C. Oct. 31, 2006), this court noted that 28 U.S.C. § 636(b)(1) permitted a district court to receive additional evidence when ruling on objections to a Report and Recommendation. "However, this court is not required to consider any evidence that was not before the magistrate judge." *Tyson*, 2006 WL

3139682, at *3. The United States District Court for the Eastern District of Virginia explained why the consideration of additional evidence is not favored:

> While there may be cases in which receipt of further evidence is appropriate, there are substantial reasons for declining to do so as a general matter. First, permitting piecemeal presentation of evidence is exceptionally wasteful of time of both the magistrate and district judges, the former having been compelled to write an arguably useless report based on less than the universe of relevant evidence and the latter being deprived of the benefit of the magistrate judge's considered view of the record. Second, opposing parties would be put to the burden of proceedings which, to a considerable degree, would be duplicative. Third, there would be instances in which parties would be encouraged to withhold evidence, particularly evidence which might be embarrassing as well as helpful on the merits, in the expectation of using it before the district judge only if they fail to prevail before the magistrate judge on a more abbreviated showing. Finally, routine consideration of evidence in support of objections which could have been presented before the magistrate judge would reward careless preparation of the initial papers.

*Virgin Enters. Ltd. v. Virgin Cuts, Inc.*, 149 F. Supp. 2d 220, 223-24 (E.D. Va. 2000) (quoting *Morris v. Amalgamated Lithographers of America*, 994 F. Supp. 161, 163 (S.D.N.Y. 1998)).

In this case, though, Plaintiff's entire deposition is in the record–Plaintiff simply never highlighted this evidence in her Response in Opposition or at the hearing. In *Allen v. BMW Manufacturing Co.*, No. 7:05-2450-RBH, 2007 WL 1032082 (D.S.C. Mar. 30, 2007), the plaintiff filed timely objections to an R&R and then filed a document entitled "Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment and Plaintiff's Objection to Report and Recommendation of Magistrate Judge." *Allen*, 2007 WL 1032082, at *4. The defendant filed a Motion to Strike the documents referenced in the memorandum and the memorandum in its entirety on the grounds that the memorandum relies on documents either not in evidence or not submitted to the Magistrate Judge. *Id.* The court granted the Motion to Strike, stating, "A party must present his best case to the Magistrate Judge and cannot wait until after a Report and Recommendation has been issued to point to specific parts of the record that are relevant

to a denial of summary judgment." *Id.* (citing *Callas v. Trane CAC, Inc.*, 776 F. Supp. 1117 (W.D. Va. 1990)). The Fourth Circuit, in an unpublished opinion, concluded the district court did not abuse its discretion in declining to permit new evidence. *Allen v. BMW Mfg. Co.*, No. 07-1626, 2008 WL 78741 (4th Cir. Jan. 8, 2008) (unpublished opinion). The documents were either not in evidence or not submitted to the magistrate judge. *Id.* at *1.

In the case *sub judice*, Plaintiff did submit the evidence to the Magistrate Judge; she simply did not point it out in her Response in Opposition or the hearing. However, the court will consider all evidence before the Magistrate Judge because (1) Plaintiff is entitled to *de novo* review, (2) the evidence was technically before the Magistrate Judge, even though Plaintiff failed to cite to many relevant portions of the record; and (3) in looking at the Fourth Circuit's opinion in *Allen*, the court seemed persuaded by the fact that the documents were not submitted to the Magistrate Judge. The court will not consider any evidence that was not before the Magistrate Judge and declines to revisit its order dated October 30, 2007, in which the court declined to allow Plaintiff to supplement the record with an affidavit *from the Plaintiff* that Plaintiff sought to introduce immediately before the hearing on the Motion for Summary Judgment.

As noted above, the evidence on which Plaintiff relies is her deposition testimony that Kim Duvall, Defendants' property manager, told Plaintiff that Foley did not want to hire Plaintiff because she was a girl and he did not think she would be able to do the job. (Pl.'s Dep. 77:12-77:23.) Defendants assert this evidence does not create a genuine issue of material fact because it is hearsay evidence. A hearsay statement is one "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *United States v. Leake*, 642 F.2d 715, 720 n.5 (4th Cir. 1981) (quoting Fed. R. Evid. 801(c)). Hearsay evidence may not be

13

considered on a motion for summary judgment.  *Md. Highways Contractors Ass'n v. State of Md.*,

933 F.2d 1246, 1251 (4th Cir. 1991) ("[S]everal circuits, including the Fourth Circuit, have stated

that hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary

judgment.");  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *see also Evans Techs. Applications*

*& Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory

or based on hearsay.").   Plaintiff has offered this evidence to prove the truth of the matter

asserted–she has offered it to prove that Foley did not want to hire her because she was female.

Accordingly, Plaintiff cannot use this evidence to oppose a grant of summary judgment, as it would

be inadmissible at trial.  She also asserts that Foley "expressed some surprise that Plaintiff was able

to hook up a back flow diverter while he was on the property."  (Objections at 5.)  Examining the

portion of Plaintiff's deposition testimony that was cited, the court concludes that it lends absolutely

no credence to Plaintiff's claim of gender discrimination.  The following exchange occurred at her

deposition:

> Q.      Did you ever receive, directly or indirectly, any feedback that Phillip [Foley]
> was satisfied with your performance?
> A.      Not really.  He'd kind of tell me good job or whatever.  He kind of just
> ignored me somewhat, I guess.  Like he'd talk to me, but didn't really–like to tell me
> what to do or ask me what was going on.  But as far as how I was doing or things like
> that–like I can remember one for instance.  He wanted the pool pump re-piped.  And
> he had mentioned it to me, so I was re-piping the pool pump.  And he came out there
> and was just like, what are you doing? I was like, re-piping.  And he said, oh, well,
> don't start that yet.  He's like, because we need a back-flow diverter and all this stuff.
> And I was like, I've already got it all hooked up.  And he was like, oh.  And that was
> it.  I, you know–

(Pl.'s Dep. 78:5-78:22.)   It does not appear to the court that this testimony is what Plaintiff

represented it to be–Plaintiff did not depose that Foley "expressed some surprise" that Plaintiff was

able to hook up a back flow diverter.  Foley simply said, "oh," when Plaintiff told him that she had

14

hooked up the back flow diverter.  It is quite a stretch to argue that this incident is evidence of gender discrimination.[5]

Plaintiff next objects to the Magistrate Judge's determination that Plaintiff (1) had not shown that she applied for an open position as maintenance supervisor and (2) could not establish there ever was an open position for which she applied.  Hand-in-Hand with this objection is Plaintiff's objection to the Magistrate Judge's recitation of the facts.  Plaintiff's first objection to the Magistrate Judge's recitation of the facts is that the Magistrate reported Brigmond told Plaintiff that Waverly was not hiring a maintenance supervisor but was instead hiring two maintenance technicians.  (Objections at 6.)  While Plaintiff acknowledges this is true, she states the Magistrate "ignored the facts as stated by the Plaintiff" in her sworn EEOC statement and deposition: that Brigmond initially stated Waverly wanted to hire a technician and a supervisor, but after Plaintiff applied and stated she only wanted the supervisor's position, he told her Waverly was not hiring a supervisor when it in fact hired a man.  (*Id*. at 6-7.)

Plaintiff also objects to the Magistrate Judge's statement that Odell became the maintenance supervisor at Waverly in June of 2005.  (Objections at 7.)  Plaintiff states that according to BNP's documents, the earliest Odell became supervisor was July 18, 2005, and he did not begin to work at Waverly until August 1, 2005.  (*Id*.)  Plaintiff also asserts the Magistrate Judge "ignores the fact that Defendants demoted Odell from a supervisor position to a service technician on March 13, 2004." (*Id*.)

_____

[5]To the extent Plaintiff is arguing she has direct evidence of discrimination in the affidavit she sought to introduce before the hearing on the Motion for Summary Judgment began, the court has already declined to consider such evidence for the reasons detailed in its order dated October 30, 2007.  (*See* Entry No. [80].)

While Plaintiff acknowledges that it is "technically true" that Plaintiff applied for a maintenance technician job at Waverly in July of 2005, Plaintiff asserts the Magistrate Judge ignores the fact that Plaintiff applied for the supervisor's position in June of 2005 but that the front office misplaced it. (Objections at 7.) Plaintiff also states that the Magistrate "makes no mention of the fact that Brigmond had offered the Waverly technician job, and Plaintiff had accepted it, not later than July 8, 2005 . . ." (*Id*. at 8.) When the Magistrate stated that Plaintiff had not applied for any job and was not employed by BNP at the time Odell was selected, Plaintiff asserts the "true facts" show that the supervisor position was available at least on June 16, 2005 and that Plaintiff had applied for it in June. (*Id*. at 8-9.)

As the Magistrate Judge noted in the R&R,

> To establish a *prima facie* case of disparate treatment, [a plaintiff] must prove a set of facts enabling the court to conclude that it is more likely than not that [the employer's] failure to promote her was motivated by discrimination. She must show by a preponderance of the evidence that (1) she is a member of the protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.

*Evans*, 80 F.3d at 959-60; *see also Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). The key to this case is determining whether Plaintiff can show that she applied for an open position.

Plaintiff asserts the Magistrate Judge overlooked evidence that she applied for a supervisory position in June of 2005, citing to her sworn statement to the EEOC and her deposition. Plaintiff deposed:

> When I started there, the first supervisor–first I was told, when I applied, that I should apply for–I had to apply as a tech, because we were hiring two techs. And then after that–they didn't want to hire a supervisor right off. They wanted to hire two techs and then give it a couple of weeks and see who was better qualified and, you know, how much everybody knew, and then they'd pick a supervisor out of that. And then the day I started, I found out that there was already a supervisor, which was Ron O'Dell,

16

I think was the first one.

(Pl.'s Dep. 21:11-21:22.)  She also deposed that she told Brigmond that she was not looking to change jobs unless she could advance.  (Pl.'s Dep. 31:14-31: .)[6]

Even if Plaintiff applied for a position as a maintenance supervisor in June of 2005, such an application would not mean Plaintiff presented evidence that she applied for an open position.  It is undisputed that Plaintiff applied for and accepted a position as a maintenance technician at Waverly and that she officially reported to work on August 2, 2005.  In an affidavit, Phillip Foley, BNP Director of Projects and Services, stated,

> 6. It has been the Company's policy and practice to try to fill vacancies with internal candidates through transfers and promotions when possible.  By promoting current BNP employees, the Company rewards long service and good job performance.  Additionally, by promoting from within, BNP benefits by retaining good employees who are familiar with BNP policies and procedures.  Mr. Odell agreed to relocate from his assignment in Charlotte, North Carolina to the Waverly Place property in Charleston.  I was already familiar with Mr. Odell's qualifications and supervisor experience.  Mr. Odell had prior maintenance supervisor experience with BNP and also with another property owner.  Ms. Lane and I agreed to offer him the maintenance supervisor position in June 2005.  We did not consider any outside candidate for this maintenance supervisor vacancy.

> 7. I first heard about Ms. Elizabeth Foster's interest in BNP employment at Waverly Place in early July 2005.  At that time, Jeff Brigmond was the acting Regional Service Manager overseeing maintenance for Waverly Place.  He met Ms. Foster when she came to the Waverly Place property for a visit.  I understood Ms. Foster had apparently worked as a service technician at the Waverly property under its prior owner.  Mr. Brigmond encouraged her to complete an employment application and recommended to me and Ms. Lane that BNP extend an offer of employment for the maintenance technician position to Ms. Foster.  Ms. Lane and I approved his recommendation and authorized him to extend the offer to her.  At the time I approved

---

[6]While Plaintiff submits evidence with her Objections that she accepted the position as a maintenance technician not later than July 8, 2005, it appears that such information was not before the Magistrate Judge.  It is especially difficult to determine what exhibits Plaintiff attached to her Response in Opposition, given that the court has been unable to locate an exhibit list or index to her exhibits.

the maintenance technician offer to Ms. Foster, we had already offered the maintenance supervisor position to BNP employee Ron Odell.

(Foley Aff. ¶¶ 6-7.)

In *White v. C&P Telephone Co. of Maryland*, 872 F.2d 420 (4th Cir. 1989) (unpublished table decision), the plaintiff brought suit alleging discriminatory denial of a promotion under 42 U.S.C. § 1981 and constructive discharge under 42 U.S.C. § 1981 and Title VII. *White*, 872 F.2d at *1. The management position at issue was filled by a white female who transferred laterally from a management position in a different department. *Id.* The court noted that one of the elements the plaintiff must prove in order to make out a prima facie case of discriminatory failure to promote was that a position was open. *Id.* The plaintiff in *White* could not establish that element because "the lateral transfer of an employee in accordance with company policy refutes the plaintiff's claim that there was an opening into which she could have been promoted." *Id.* (citing *Woodard v. Lehman*, 717 F.2d 909, 917-18 (4th Cir. 1983)). It appears that Odell was not working in a supervisor's position at the time he was offered the maintenance supervisor position at Waverly. However, he had previous experience in maintenance supervision both with BNP and another property owner, and his promotion was in line with BNP's policies. In addition, Plaintiff did not start work until August 2, 2005, when Odell was already on the job (albeit by as little as one day), making a failure to promote claim seem frivolous, since it is difficult to imagine that one would be promoted before reporting to work.

Assuming Plaintiff applied for a supervisor's position before the position had been offered to Odell and that Plaintiff could establish a *prima facie* case, summary judgment remains appropriate. Under the *McDonnell Douglas* framework, once the employee establishes a *prima facie* case of discrimination, the employer "has an opportunity to present a legitimate, non-discriminatory reason

18

for its employment action." *Evans*, 80 F.3d at 959. Once the employer does that, "the presumption of unlawful discrimination created by the *prima facie* case 'drops out of the picture' and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). It is always the plaintiff who "bears the ultimate burden of proving that the employer intentionally discriminated against her." *Id.*

BNP presented sufficient evidence to show that it had a legitimate, non-discriminatory reason for its employment action. Specifically, the affidavits of Phillip Foley and Reta Lane indicate that BNP had the policy of filling vacancies through transfers and promotions if qualified employees were interested. (Foley Aff. ¶ 6; Lane Aff. ¶ 4.) Both of these affidavits indicate that *no* external applicants were considered for the maintenance supervisor position at Waverly, as Odell was currently a BNP employee serving in a maintenance technician capacity and had supervisory experience. (Foley Aff. ¶ 6; Lane Aff. ¶ 4.) Plaintiff has presented no evidence that the decision not to offer Plaintiff a supervisory position was motivated by discrimination, and mere speculation is insufficient to overcome a Motion for Summary Judgment. *See Evans*, 80 F.3d at 960 ("[The plaintiff] has failed to show that she was more qualified for the promotion than the man selected or that, as between her sex and [the employer's] explanation, her sex was the more likely reason for her failure to be promoted. While a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient."); *see also Hill*, 354 F.3d at 286 ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination. To demonstrate such an intent on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that the protected trait

19

actually motivated the employer's decision."). Plaintiff has no evidence whatsoever that she was not

offered a supervisory position (as opposed to Odell) because she is female, and there is in fact

evidence in the record that Phillip Foley has approved the promotion of women employed in

maintenance work at BNP. (Foley Aff. ¶ 2.) Because Plaintiff has no evidence of such an intent, she

cannot prevail under either the mixed-motive theory or the pretext framework.

      Nor can Plaintiff show that her sex was a motivating factor behind BNP's decision to offer

the maintenance supervisor position to Keller and Sanders. Both Keller and Sanders were already

employed by BNP as maintenance supervisors, and Plaintiff was employed as a maintenance

technician. Because the transfers of Keller and Sanders were simply lateral transfers, Plaintiff is not

able to make a *prima facie* claim of discrimination. These transfers fall squarely within the holding

of *White*. *See White*, 872 F.2d 420.[7] Plaintiff tries to assert this court should not rely on *White*, as

---

[7]Plaintiff asserts in her Objections that the Magistrate ignores the fact that Defendants admitted to the EEOC that the supervisor position was "open" at the time Odell resigned from it. (Objections at 9.) Again, the Magistrate would have had to comb through the voluminous file Plaintiff submitted with her Response in Opposition in order to find such a document. BNP wrote a letter, dated March 16, 2006, to the South Carolina Human Affairs Commission, in which BNP stated, "Thus, there was only one time the position was even 'open,' and BNP had clearly legitimate business reasons for moving Mr. Keller (and then Mr. Sanders) into that position instead of Charging Party." (Brigmond Dep. Ex.) The court finds that such a statement by BNP does not admit that Plaintiff has established the element of a *prima facie* case requiring that there be an open position. Indeed, in *White*, there was just as much of an "open" position, but the court ruled that a lateral transfer in accordance with company policy refutes a claim that there was an opening. As Defendants point out, there is a difference "between a factual 'opening' and a legal, Title VII or 'prima facie' vacancy." (Resp. to Objections at 14.)

      Plaintiff also states that there is a letter dated October 21, 2005, "containing an offer of employment to Keller . . . [that] makes it patently clear that it was not a lateral move for Keller. If it were a lateral move, there would be no need for an offer of employment letter." (Objections at 10.) It does not appear that Plaintiff submitted this letter with her Response in Opposition to Defendants' Motion for Summary Judgment. The letter, which appears on Waverly Place stationary, states, "This letter serves as our confirmation of our offer of Service Manager at Waverly Place Apartments. I am pleased to have you join Waverly Place team and I anticipate that you will contribute to the successful operation of our properties." (Objections Ex. G.) To

it is "an unreported case and was decided prior to the 1991 amendments to the Civil Rights Act which allows Plaintiff to go forward on a mixed motive theory." (Objections at 17.) While true, the court finds *White*'s holding remains unaltered by the amendments to the Civil Rights Act, and in any event, Plaintiff has not provided any evidence upon which a reasonable juror could conclude the decision not to promote her was based on her sex. BNP is thus entitled to summary judgment. *See Cooper v. Nan Ya Plastics Corp.*, No. 4:04-21823-TLW-TER, 2007 WL 2484126, at *14 (D.S.C. July 20, 2006) (citing *Hill*, 354 F.3d at 286).

## CONCLUSION

It is therefore **ORDERED**, for the foregoing reasons, that Defendants' Motion for Summary Judgment is **GRANTED**.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**February 25, 2008**

---

the extent this evidence was not before the Magistrate Judge, the court declines to consider it. However, the existence of this letter does not in any way indicate that the move was not a lateral one. There is no evidence, other than Plaintiff's say-so, that Keller was not a maintenance supervisor for BNP at its Savannah Shores property prior to becoming the maintenance supervisor at Waverly Place.

21